**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION**

**NO.  5:11-CV-00075-D**

| | | |
|---|---|---|
| MORTGAGE PAYMENT PROTECTION , INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM** |
| | ) | **& RECOMMENDATION** |
| GENWORTH MORTGAGE INSURANCE CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

This cause comes before the Court upon the following motions referred to the undersigned:

**DE-12**    Genworth's Motion to Dismiss Pursuant to Rule 12(b)(6)

**DE-13**    Genworth's Motion to Dismiss Pursuant to Rule 12(b)(7)

**DE-19**    Genworth's Motion to Dismiss Amended Complaint Pursuant to Rules 12(b)(1) and 12(b)(7)

**DE-20**    Genworth's Motion to Dismiss Amended Complaint Pursuant to Rule 12(b)(6)

**DE-32**    MPPI's Motion to Compel Production of Electronically Stored Information in Native Format

**DE-38**    Genworth's Motion to Stay Discovery and Scheduling Order

**DE-40**    Genworth's Motion for Protective Order

1

**DE-44**      Genworth's Motion for Leave to File Supplemental Evidence

**DE-51**      MPPI's Motion to Compel

**DE-56**      MPPI's Motion for Partial Summary Judgment

**DE-59**      MPPI's Motion for Extension of Time of Deadlines

**DE-61**      Genworth's Motion to Stay

**DE-63**      Genworth's Motion to Continue or Deny Pursuant to Rule 56(d)

**DE-71**      Joint Motion for Protective Order

For the reasons stated herein, the undersigned RECOMMENDS that Genworth's motions to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure be granted as to Count One of the Amended Complaint, but denied as to Counts Two and Three. It is also RECOMMENDED that Count One of the Amended Complaint be dismissed pursuant to Rule 12(b)(1). The undersigned further RECOMMENDS that SBC be joined as a necessary party to the instant dispute. Absent joinder, the undersigned RECOMMENDS that Counts One and Three be dismissed pursuant to Rule 12(b)(7).

## I.    <u>BACKGROUND</u>

Plaintiff Mortgage Payment Protections, Inc. ("MPPI") is an independent insurance brokerage and program administration firm based in Heathrow, Florida. Am. Compl. ¶ 5 (DE-17). MPPI is not an insurance company; rather, as an insurance broker, MPPI receives compensation based on the insurance it places for its corporate clients. Am. Compl. ¶ 5. MPPI is a leading broker and program administrator of an insurance product known as involuntary unemployment insurance ("IUI"), which provides coverage to

2

homeowners who become involuntarily unemployed.  Am. Compl. ¶¶ 6-7.  An IUI policy is designed to ensure continued payment of a homeowner's mortgage for up to six months in the event the homeowner loses his job.  (*Id.*).  The IUI product is marketed only on a commercial blanket basis to commercial clients, such as lenders, investors, and mortgage insurers, and is not sold directly to consumers.  Am. Compl. ¶ 6.  As the broker and program administrator for its IUI business, MPPI deals directly with its IUI policyholders and is responsible for the administrative services necessary to handle, receive, process, and pay all claims.  Am. Compl. ¶ 8.  Because MPPI is not an insurance company, however, an insurance carrier is required to underwrite and take on the risk of the IUI program MPPI administers.  (*Id.*).

Defendant Genworth Mortgage Insurance Corporation ("Genworth"), a private mortgage insurer headquartered in Raleigh, North Carolina, approached MPPI in 2003 regarding IUI.  Am. Compl. ¶¶ 2, 9.  Genworth wanted to add IUI to its other mortgage insurance products and services.  Am. Compl. ¶ 9.  To that end, MPPI and Genworth executed a four-party contract in 2004 wherein Genworth agreed to include MPPI's IUI program in certain mortgage insurance products it marketed.  Am. Compl. ¶ 10.  Virginia Surety Company ("VSC") and cynoSure Financial Inc. ("CFI") were also parties to the 2004 agreement.  Under the terms of the 2004 agreement, MPPI agreed to act as Genworth's broker, CFI acted as the claims administrator, and insurance carrier VSC underwrote the IUI program.  (*Id.*).  The 2004 agreement expired in accordance with its

terms in December 2005. From January 2006 until January 2008, MPPI continued to conduct business with Genworth. Am. Compl. ¶ 10.

On January 1, 2008, MPPI entered into a new, three-party IUI agreement with Genworth and London Small Business Consortium ("SBC"). Am. Compl. ¶ 11. In the "Agreement to Provide Involuntary Unemployment Insurance" (hereinafter, "the Agreement"), MPPI remained Genworth's broker for IUI and SBC underwrote the IUI program as the insurance carrier. Genworth, MPPI, and SBC actively negotiated the terms of the Agreement from approximately July 2007 until January 2008. The Agreement identifies the basic roles and responsibilities of the parties as follows:

> WHEREAS, Genworth desires to offer products that combine[] involuntary unemployment insurance with mortgage guaranty insurance . . . for homeowners obtaining a home mortgage . . . where Genworth insures the Covered Loan, and WHEREAS, the mortgage guaranty insurance will be provided by Genworth, and the involuntary employment insurance will be provided by SBC, and wherein SBC is the underwriting authority . . . and WHEREAS, MPPI is the exclusive PROGRAM ADMINISTRATOR for Involuntary Unemployment Insurance ("IUI") in the United States and will provide services to Genworth with respect to [IUI] . . . .
>
> (DE-17-1, p.2).

In Section Five of the Agreement, the parties agree that "SBC will issue a policy to Genworth for blanket involuntary unemployment insurance ("IUI") [and] Genworth will utilize the IUI product within its scope of business operation through Genworth's lender channels." (DE-17-1, p.3).

Under Section Four of the Agreement, SBC designates MPPI as its agent as follows:

"**<u>Agents</u>**: SBC represents and warrants that MPPI is an exclusive agent and representative

4

of SBC and is authorized to act on its behalf with respect to the services and obligations provided herein." (DE-17-1, p.3).

With regard to the effective dates, the Agreement states that

> This Agreement ("Agreement") is made and entered into as of January 1, 2008 (the "Effective Date") by and among **MORTGAGE PAYMENT PROTECTION, INC.** (herein referred to as "MPPI"), **(LONDON) SMALL BUSINESS CONSORTIUM** (herein referred to as "SBC") and **GENWORTH MORTGAGE INSURANCE CORPORATION on behalf of itself and its mortgage insurance affiliates** (herein referred to as "GENWORTH").
> . . . .
> **NOW THEREFORE**, in consideration of the mutual covenants and promises, and upon the terms and conditions, hereinafter set forth, the parties hereto agree as follows:
> . . . .
> 2. **Term.** The term of this Agreement will commence on the Effective Date and continue until December 31, 2010, or an earlier termination date in accordance with this paragraph or paragraph 18 of this Agreement. (Such period is herein referred to as the "Term."). This Agreement will automatically renew on each anniversary of the Effective Date thereafter until canceled or subject to Section 18 of this Agreement.

(DE-17-1, p.2).

Termination under Section 18 of the Agreement provides as follows:

> 18. **Termination**. . . . .
> Without cause: Any party may terminate this Agreement without cause upon ninety (90) days['] notice to the other parties for any reason. However, SBC/MPPI will accept loans closed during this period of notification and premium(s) will be remitted for those covered loans per Section 12 of this agreement. In the event that one of the parties ceases to conduct business or exist as an entity or organization, a sixty (60) day notice will apply.

(DE-17-1, p.7).

The Agreement is governed by the laws of Florida. (DE-17-1, p. 9, ¶ 25).

MPPI alleges that "[i]n conjunction with and in furtherance of the Agreement, Genworth, MPPI, and SBC . . . entered into certain additional written contracts, identified as the Cover Note and Policy for the IUI programs." Am. Compl. ¶ 12. Each Cover Note and Policy set forth the policy terms of the IUI program for the new policy year "including various additional terms and conditions for the performance of the Agreement" between MPPI and Genworth. (*Id.*). According to MPPI, "[t]hese additional terms and conditions constitute an endorsement to the IUI policy and have the full force and effect of the policy." (*Id.*) In addition, "each Cover Note and Policy is an amendment to the Agreement and has the full force and effect of the Agreement." Am. Compl. ¶ 14. Taken together, MPPI alleges "the Cover Note and Policy and its additional terms and conditions, operating under the framework of the Agreement, document the contractual terms agreed by Genworth, MPPI, and SBC for the operation of the IUI program." (*Id.*). MPPI attached to its amended complaint "[t]rue and correct copies of the 2010 and 2011 Cover Notes and Policies between Genworth, MPPI, and SBC."[1] *Id.* The Cover Notes and Policies are governed by either the laws of North Carolina or Virginia.[2] (DE-17-2, p.3).

---

[1] The Cover Note and Policy issued in 2010 does not differ in any significant respect from the Cover Note and Policy issued in 2011. For ease of reference, the 2010 and 2011 Cover Notes and Policies will be referred to collectively as "the Cover Notes and Policies."

[2] It is unclear whether the laws of North Carolina or Virginia apply. The Cover Notes state:

**CHOICE OF LAW & JURISDICTION**: Law: State of Virginia
**(DISPUTES CLAUSE)** Jurisdiction: United States of America as per Service of Suit Clause
**<u>CHOICE OF LAW CLAUSE</u>**

6

By correspondence dated December 23, 2010, Genworth notified MPPI of its termination of the Agreement in accordance with Section 18, effective March 31, 2011. Am. Compl. ¶ 44. As of April 1, 2011, Genworth stopped using MPPI as its exclusive supplier for placement with underwriters of the IUI products its purchases and stopped using MPPI as the program administrator for its IUI products. Am. Compl. ¶ 46. Genworth continues to offer IUI products in conjunction with its mortgage insurance through another broker and program administrator. Am. Compl. ¶ 46.

MPPI filed its first complaint against Genworth on February 22, 2011, seeking declaratory judgment regarding "the parties' rights, status, duties and legal relations under the Agreement and the 2010 and 2011 Cover Notes and Policies[.]" (DE-1, pp.7-8). Genworth moved to dismiss the complaint pursuant to Rules 12(b)(6) and (b)(7). (DE-12, DE-13). MPPI thereafter amended its complaint to assert three causes of action against Genworth: (1) breach of contract based on anticipatory repudiation as to the in-force covered loans at the time of Genworth's termination of the Agreement; (2) breach of contract based on specific performance arising from Genworth's failure to provide an audit under the Agreement; and (3) reformation of the exclusivity provision contained in the Agreement. (DE-17). MPPI no longer requests declaratory judgment. Genworth

---

It is hereby noted and agreed by both Insurers and the Insured that any dispute concerning the interpretation and enforcement of this Policy shall be governed by the laws of North Carolina and the courts of the United States of America shall have exclusive jurisdiction in any dispute arising hereunder.

(DE-17-2, p.3; DE-17-3, p.3).

now seeks dismissal of MPPI's amended complaint pursuant to Rules 12(b)(1), (b)(6), and (b)(7).

Further facts may be set out as necessary to support the recommendation.

## II.     LEGAL BACKGROUND

Genworth moves to dismiss MPPI's claims pursuant to Rule 12(b)(1), for MPPI's lack of standing (and thereby subject matter jurisdiction), Rule 12(b)(6), for MPPI's failure to state a claim, and Rule 12(b)(7), for MPPI's failure to join SBC as a necessary party to the instant litigation.

### A.  Rule 12(b)(1): Subject Matter Jurisdiction/Standing

Genworth asserts MPPI lacks standing to bring the instant complaint and that the Court therefore lacks subject matter jurisdiction over the dispute.

The question of standing to sue is an issue of constitutional dimension, in that Article III of the Constitution "limits the judicial power of the federal courts to resolving actual cases and controversies." Finlator v. Powers, 902 F.2d 1158, 1160 (4th Cir. 1990). The "core component" of the requirement that a litigant have standing to invoke the authority of a federal court "is an essential and unchanging part of the case-or-controversy requirement of Article III." Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992). In order to possess standing, a plaintiff must demonstrate: (1) an injury-in-fact that is concrete and particularized, rather than conjectural or hypothetical; (2) that the injury was caused by the conduct complained of; (3) and that such injury is likely to be redressed by a favorable judicial decision. Id. at 560-61. "Thus, 'a plaintiff generally

8

must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties.'" Burke v. City of Charleston, 139 F.3d 401, 405 (4th Cir. 1998) (quoting Warth v. Seldin, 422 U.S. 490, 499 (1975)).

"When a Rule 12(b)(1) motion challenge is raised to the factual basis for subject matter jurisdiction, the burden of proving subject matter jurisdiction is on the plaintiff." Richmond, Fredericksburg & Potomac R.R. Co. v. United States, 945 F.2d 765, 768-69 (4th Cir. 1991)) (citing Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir. 1982)); *see also* Friends for Ferrell Parkway, LLC v. Stasko, 282 F.3d 315, 320 (4th Cir. 2002). "In determining whether jurisdiction exists, the district court is to regard the pleadings' allegations as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." Richmond, 945 F.2d at 768.

### B. Rule 12(b)(6): Failure to State a Claim

The purpose of a motion to dismiss, under Federal Rule of Civil Procedure 12(b)(6), is to test the legal sufficiency of the complaint, not to resolve conflicts of fact or to decide the merits of the action. Edwards v. City of Goldsboro, 178 F.3d 231, 243-44 (4th Cir. 1999). The court may dismiss a complaint for failure to state a claim if "it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957). In considering a motion to dismiss, the court assumes the truth of all facts alleged in the complaint and the existence of any fact that can be proved, consistent with the

complaint's allegations. *See* Hishon v. King & Spalding, 467 U.S. 69, 73 (1984); Conley, 355 U.S. at 45-46; Mylan Labs., Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993). Nevertheless, while the court must take the facts in the light most favorable to the plaintiff, the court "need not accept the legal conclusions drawn from the facts [or] . . . . unwarranted inferences, unreasonable conclusions, or arguments." Eastern Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship, 213 F.3d 175, 180 (4th Cir. 2000) (citation omitted); *see also* Parham v. Pepsico, Inc., 927 F.Supp. 177, 178 (E.D.N.C. 1995) ("Conclusory allegations or legal conclusions masquerading as factual allegations will not suffice to prevent a motion to dismiss pursuant to 12(b)(6)"). In this way, a motion to dismiss "allows a court to eliminate actions that are fatally flawed in their legal premises." Parham, 927 F.Supp. at 178.

Generally, on a motion to dismiss, the court is limited to consideration of the facts alleged in the complaint, exhibits attached to the complaint, and matters of public record. *See* Fed. R. Civ. Pro. 12(b), 10(c). However, where a plaintiff states facts and attaches documents central to his claim to his response to a motion to dismiss, the court will consider these facts and documents without treating the motion as a summary judgment motion. *See* Fayetteville Investors v. Commercial Builders, Inc., 936 F.2d 1462, 1465 (4th Cir. 1991). The court need not accept as true allegations in the pleadings that are directly contradicted by the exhibits. *See id.* ("In the event of conflict between the bare allegations of the complaint and any [attached] exhibit . . . the exhibit prevails").

## C. Rule 12(b)(7): Failure to Join a Necessary Party

10

The party making the Rule 12(b)(7) motion bears the burden of showing that required parties have not been joined. *See* American Gen. Life & Accident Ins. Co. v. Wood, 429 F.3d 83, 92 (4th Cir. 2005). Federal Rule of Civil Procedure 19 provides in relevant part:

> **(a) Persons Required to Be Joined if Feasible.**
>> (1) ***Required Party***. A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:
>> (A) in that person's absence, the court cannot accord complete relief among existing parties; or
>> (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
>> (i) as a practical matter impair or impede the person's ability to protect the interest; or
>> (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest. . . .
>
> (**b**) **When Joinder Is Not Feasible.** If a person who is required to be joined if feasible cannot be joined, the court must determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed. . . .

To determine whether joinder is appropriate under this rule, the court must examine: "(1) whether the party is 'necessary' to the action under Rule 19(a); and (2) whether the party is 'indispensable' under Rule 19(b)." Wood, 429 F.3d at 92 (citation omitted). "A court should hesitate to conclude . . . that a litigant can serve as a proxy for an absent party unless the interests of the two are identical." National Union Fire Ins. Co. v. Rite Aid of S.C., Inc., 210 F.3d 246, 251 (4th Cir. 2000).

## III.  DISCUSSION

## A.  **Failure to State a Claim**

In its amended complaint, MPPI asserts three claims for relief against Genworth: (1) breach of contract based on anticipatory repudiation as to the covered loans at the time of Genworth's termination of the Agreement; (2) breach of contract based on specific performance arising from Genworth's failure to provide an audit under the Agreement; and (3) reformation of the exclusivity provision of the Agreement.  (DE-17, pp. 14-17).

### 1.  **Count One: Breach of Contract: Anticipatory Repudiation**

MPPI alleges that Genworth breached the Agreement by informing MPPI that it intended to terminate existing covered loans without meeting the conditions set forth in Section Seven of the Policy ("Section Seven") and Section Four of the Terms and Conditions attached to the Cover Notes and Policies ("Section Four").  *See* Am. Comp. ¶¶ 21-33.  MPPI alleges that Sections Seven and Four restrict Genworth's ability to cancel covered loans, notwithstanding termination of the Agreement.  *Id.*

Section Seven of the Policy reads:

### SECTION 7: TERMINATION OF THE POLICY
This Policy may be terminated by Company for nonpayment of premium.

This Policy may be terminated by Company or Policyholder by giving the other party thirty (30) days prior written notice.  Notice can be delivered by one party to the other or mailed by Certified or Registered Mail to their last known address.  The Policy will end on the date given in the written notice providing the date for termination is at least thirty (30) days after the written notice is given.  The coverage of the Policyholder with respect to its risks associated with a Covered Loan will continue for as long as the premium is paid.  No new loan coverage may become effective after the Policy termination date, except for loans with mortgage insurance application dates of not more than 120 days prior to the date of termination.

(DE-17-2, p.17; DE-17-3, p.18).

MPPI alleges that Section Seven provides "that an existing policy may only be terminated for 'nonpayment of premium' not removal of In-Force Covered Loans to another broker and program administrator and further provide[s] that 'the coverage of the Policyholder with respect to its risks associated with a Covered Loan will continue for so long as the premium is paid.'" Am. Compl. ¶ 26. Thus, asserts MPPI, "Section 7 ensured that MPPI would remain the exclusive broker and administrator for the existing loans despite termination by any party pursuant to the Termination Provision." Am. Compl. ¶ 29.

MPPI further alleges that Section Four, listed as one of the terms and conditions attached to the Cover Notes and Policies, also restricts Genworth's ability to cancel covered loans. Section Four reads in pertinent part as follows:

> **THE FOLLOWING TERMS AND CONDITIONS ARE ENDORSED AND ARE MADE PART OF THE COVER NOTE ATTACHING TO POLICY WORDING**
> . . . .
> 4) The following are the only permissible circumstances under which a covered loan may be cancelled by Genworth. In each case Genworth must notify MPPI of such cancellation.
> a. The Covered Loan is paid off or refinanced.
> b. MI coverage on the Covered Loan is rescinded by Genworth.
> c. MI coverage on the Covered Loan is cancelled by the servicer.
> d. The covered Loan reaches the end of its term of IUI coverage under the policy.

(DE-17-2, p.19; DE-17-3, p.20).

According to MPPI, Section Four "restricts . . . Genworth's right to cancel the In-Force Covered Loans" and "provides the only circumstances under which Genworth may

13

stop paying premiums, with respect to an In-Force Covered Loan," even post-termination.  Am. Comp. ¶ 31.

Based on its allegations, MPPI contends that even if Genworth properly terminated the Agreement by giving ninety days' notice, and properly terminated its IUI insurance in accordance with Section Seven of the Policy, Genworth nevertheless cannot terminate existing covered loans unless one of the four circumstances listed in Section Four of the terms and conditions attached to the Cover Notes and Policies is present. Under MPPI's interpretation of the Cover Notes and Policies, Genworth must maintain covered loans even after termination of the IUI insurance, until the covered loans are paid off, refinanced, or expire, or until Genworth rescinds its mortgage insurance or the covered loans are canceled by SBC.  Because none of the circumstances listed under Section Four has occurred, MPPI asserts Genworth has breached the Cover Notes and Policies and by extension, the Agreement.  This argument lacks merit for a number of reasons.

First, the Agreement clearly gives the parties the right to terminate the Agreement "without cause upon ninety (90) days notice to the other parties for any reason." (DE-17-1, p.7).  Nothing in the Agreement obligates Genworth to continue to use MPPI as its broker for any covered loans following termination of the Agreement.  As MPPI alleged that Genworth gave more than ninety days' notice of termination of the Agreement to MPPI and SBC, Genworth properly terminated the Agreement under its plain terms.

MPPI has therefore failed to state a claim for breach of contract based on termination of the Agreement.

Second, MPPI is not a party to the Cover Notes and Policies and therefore, as will be further discussed *infra* in Section III(B) of this Memorandum and Recommendation, lacks standing to assert a claim based on a purported breach of the Cover Notes and Policies. The Agreement to which MPPI *is* a party is an entirely separate and distinct contract from the Cover Notes and Policies. Pursuant to its obligations under the Agreement, SBC issued the IUI Policy, along with the attached Cover Note, each year to Genworth. The Cover Notes and Policies, on their face, are bilateral insurance contracts issued by SBC, the insurer, to Genworth, the policyholder: "This Policy and any attachments is the entire contract *between the Insurer and Policyholder*."[3] (DE-17-2,

---

[3] The Cover Notes and Policies identify Genworth as the "Insured" or "Policyholder" and SBC as the "Insurer" or "Company." The Policy consistently refers to Genworth and SBC as the only parties to the contract. For example, under Section Seven of the Policy, the contract provides for termination of the policy: "This Policy may be terminated by Company or Policyholder by giving *the other party* thirty (30) days prior written notice." (DE-17-2, p.17; DE-17-3, p.18) (emphasis added). MPPI is identified as the program administrator on Cover Note I000510000, but is never identified as a party to the Policy. Similarly, the Terms and Conditions attached to the Cover Note detail some of MPPI's administrative responsibilities as the program administrator and SBC's agent, but never identify MPPI as a party to the Policy. For example, the Terms and Conditions describe the "monthly reconciliation process . . . instituted by MPPI *on behalf of underwriters*." (DE-17-2, p.19; DE-17-3, p.20) (emphasis added). MPPI's performance of its duties as SBC's agent in accordance with the terms of the Cover Notes and Policies does not make MPPI a party to the contract. *See, e.g.*, <u>Mayo v. American Fire & Cas. Co.</u>, 282 N.C. 346, 353-54, 192 S.E.2d 828, 832-33 (1972) (noting that an insurance broker is not a party to the contract of insurance and is therefore "not liable thereon, irrespective of any default in the performance thereof"); <u>Harriss, Magill & Co. v. John H. Rodgers & Co.</u>, 143 Va. 815, 830-31, 129 S.E. 513, 517 (1925) (reasoning that an agent or broker of an insurance contract is not a party to the policy). Incredibly, MPPI argues that "nowhere in the Cover Notes and Policies do they state that MPPI is not a party thereto." (DE-27, p.6). Under this absurd reasoning, however, anyone could claim to be a party to the contract.

p.17; DE-17-3, p.18).  Because MPPI is not a party to the insurance contract issued by SBC to Genworth, it cannot assert claims based on any alleged breach of the Cover Notes and Policies.  *See* <u>Cara's Notions v. Hallmark Cards</u>, 140 F.3d 566, 569 n.2 (4th Cir. 1998).

Third, MPPI's assertions regarding breach of the Agreement are based entirely on its allegation that "each Cover Note and Policy is an amendment to the Agreement and has the full force and effect of the Agreement."  Am. Compl. ¶ 12.  This allegation, however, flatly contradicts the plain language of both the Agreement and the Cover Notes and Policies.  The court need not accept as true allegations in the pleadings that are directly contradicted by the exhibits.  *See* <u>Fayetteville Investors</u>, 936 F.2d at 1465 ("In the event of conflict between the bare allegations of the complaint and any [attached] exhibit . . . the exhibit prevails").  The Cover Notes and Policies do not reference the Agreement or purport to modify it.  Notably, the Agreement states that "No party may amend or modify this Agreement, except in writing and signed by all parties."  (DE-17-1, p.9).  The Cover Notes and Policies are not signed by the parties.  Thus, under the express terms of the Agreement, the Cover Notes and Policies do not modify or amend the Agreement.  *See* <u>State Farm Mut. Auto. Ins. Co. v. Menendez</u>, 70 So. 3d 566, 569-70 (Fla. 2011) (noting that courts are bound by the plain meaning of the contract's text).  Rather, the Cover Notes and Policies, while certainly issued pursuant to SBC's obligation under the Agreement to provide IUI insurance to Genworth, are independent contracts.  They do not represent an extension of the Agreement, nor do they purport to amend the

16

Agreement.  MPPI therefore fails to state a claim based on breach of the Agreement through an asserted breach of the Cover Notes and Policies.

MPPI claims it may pursue its claim of breach of the Cover Notes and Policies as SBC's agent.  The issue of agency will be examined in greater detail in Section III(B).  Yet even if MPPI has standing as SBC's agent to enforce the Cover Notes and Policies, MPPI's allegations fail to state a valid breach of contract claim inasmuch as they contravene the plain language of the Cover Notes and Policies.  "The guiding light in the construction of a contract is the intention of the parties as expressed by them in the words they have used, and courts are bound to say that the parties intended what the written instrument plainly declares."  W.F. Magann Corp. v. Virginia-Carolina Elec. Works, Inc., 203 Va. 259, 264, 123 S.E.2d 377, 381 (1962); *accord* Walton v. City of Raleigh, 342 N.C. 879, 881, 467 S.E.2d 410, 411 (1996) ("If the plain language of a contract is clear, the intention of the parties is inferred from the words of the contract.").

Section Seven of the Policy provides for termination of IUI coverage and expressly gives Genworth the right to terminate the policy "by giving the other party thirty (30) days prior written notice."  (DE-17-2, p.17; DE-17-3, p.18).  By its notice of termination, Genworth gave SBC more than thirty days' notice of termination of the policy.  The Cover Notes and Policies also contain the following Cancellation Clause: "NOTWITHSTANDING anything contained in this Insurance to the contrary this Insurance may be cancelled by the Assured at any time by written notice or by surrendering of this Contract of Insurance."  (DE-17-2, p.6; DE-17-3, p.6).

MPPI nevertheless alleges that coverage for "in-force" covered loans under an existing policy "may only be terminated for 'nonpayment of premium'" pursuant to Section Seven of the Policy. Am. Comp. at ¶ 26. However, Section Seven provides that "This Policy may be terminated by Company for nonpayment of premium. This Policy may be terminated by Company or Policyholder by giving the other party thirty (30) days prior written notice." (DE-17-2, p. 17; DE-17-3, p.18). Thus, under Section Seven of the Cover Notes and Policies, SBC may terminate the Policy for nonpayment of premium or upon thirty days' prior written notice, while Genworth may terminate the Policy upon thirty days' prior written notice. Genworth's right to terminate the Policy is not constrained by continued payment of premium for covered loans. Instead, Section Seven of the Policy provides that, following termination, Genworth may elect to continue coverage for a covered loan[4] by choosing to make post-termination premium payments:

> The Policy will end on the date given in the written notice providing the date for termination is at least thirty (30) days after the written notice is given. The coverage of the Policyholder with respect to its risks associated with a Covered Loan will continue for so long as the premium is paid.

(DE-17-2, p.17; DE-17-3, p.18). Nothing in Section Seven, however, compels or requires Genworth to continue to make post-termination premium payments, or to continue IUI coverage for risks associated with "Covered Loans." In reviewing an agreement, the court's task is not "to find discord in differing clauses, but to harmonize all clauses if possible." Peirson v. American Hardware Mut. Ins. Co., 249 N.C. 580, 583,

---

[4] Under the Cover Notes and Policies, the term "covered loan" is defined as any loan insured by the policyholder—here, Genworth.

107 S.E.2d 137, 139 (1959); *accord* <u>D.C. McClain, Inc. v. Arlington Cnty.</u>, 249 Va. 131, 135-36, 452 S.E.2d 659, 662 (1995) (A court must give every word or clause in a contract meaning when a reasonable meaning can be given to it). MPPI's interpretation of Section Seven contravenes the plain terms of the termination provision provided in Section Seven, as well as the Cancellation Clause.

MPPI also asserts that Section Four of the Terms and Conditions attached to the Cover Notes and Policies requires Genworth to continue coverage of an existing loan through SBC and MPPI, even following termination of the Agreement and termination of the Cover Notes and Policies. But Section Four only relates to the circumstances under which Genworth may cancel a covered loan while IUI coverage is in force under the terms of the Policy, not termination of the Policy itself. Section Four does not refer to termination of IUI coverage at all, much less expressly modify termination of the Policy under Section Seven.

> "Courts interpret insurance policies, like other contracts, in accordance with the intention of the parties gleaned from the words they have used in the document. Each phrase and clause of an insurance contract should be considered and construed together and seemingly conflicting provisions harmonized when that can be reasonably done, so as to effectuate the intention of the parties as expressed therein."

<u>Seals v. Erie Ins. Exch.</u>, 277 Va. 558, 562, 674 S.E.2d 860, 862 (2009) (quoting <u>Floyd v. Northern Neck Ins. Co.</u>, 245 Va. 153, 158, 427 S.E.2d 193, 196 (1993)); <u>Peirson</u>, 249 N.C. at 583, 107 S.E.2d at 139 (same). "The mere fact that the parties disagree about the meaning of [a] contract's terms is not evidence that the contract language is ambiguous."

<u>Pocahontas Mining LLC v. CNX Gas Co. LLC</u>, 276 Va. 346, 353, 666 S.E.2d 527, 531 (2008). "[I]f the meaning of the policy is clear and only one reasonable interpretation exists, the courts must enforce the contract as written; they may not, under the guise of construing an ambiguous term, rewrite the contract or impose liabilities on the parties not bargained for and found therein." <u>Woods v. Nationwide Mut. Ins. Co.</u>, 295 N.C. 500, 506, 246 S.E.2d 773, 777 (1978). MPPI's strained analysis of Section Four unreasonably contradicts the language and purpose of Section Seven.

Moreover, even if Section Four related to termination of the Policy, rather than cancellation of covered loans, the Cancellation Clause expressly prevails over contradictory language anywhere else in the Cover Notes and Policies, including the language of Sections Four and Seven: "NOTWITHSTANDING anything contained in this Insurance to the contrary this Insurance may be cancelled by the Assured at any time by written notice or by surrendering of this Contract of Insurance." By its plain terms, the Cancellation Clause cancels the "Insurance" issued by SBC to Genworth; that is, all IUI coverage for the risks associated with the loans insured by SBC. Thus, under the Cancellation Clause, Genworth could cancel all IUI coverage upon proper notice at any time, "notwithstanding" any other endorsements to the contrary. Because nothing in Section Four limits Genworth's ability to terminate its insurance with SBC, including the covered loans, or otherwise obligates Genworth to continue payment to SBC for covered loans following termination, MPPI fails to state a claim for breach of contract.

20

MPPI's allegations contradict the plain language of the Cover Notes and Policies and therefore may be properly disregarded by the court. *See* <u>Veney v. Wyche</u>, 293 F.3d 726, 730 (4th Cir. 2002) (noting that a court is not required to accept as true allegations that contradict matters properly subject to judicial notice or by exhibit); <u>Fayetteville Investors</u>, 936 F.2d at 1465. As MPPI fails to state a claim for breach of contract based on anticipatory repudiation, the undersigned RECOMMENDS that Genworth's motions to dismiss Count One of the Amended Complaint, MPPI's breach of contract claim based on anticipatory repudiation, be GRANTED pursuant to Rule 12(b)(6).

### 2. <u>Count Two: Breach of Contract: Specific Performance</u>

MPPI alleges that under Section Twenty of the Agreement, the parties have a right to conduct an audit of any other party. Am. Comp. ¶¶ 34-36. Section Twenty of the Agreement provides that "Genworth, SBC and MPPI . . . shall have the right to conduct periodic audits of the books and records of any other party with respect to [the IUI product] and any obligations with respect thereto performed under this Agreement." (DE-17-1, p.8). MPPI served its first request for an audit upon Genworth on January 6, 2011, after Genworth notified MPPI of termination of the Agreement. Am. Comp. ¶ 35. Termination of the Agreement was effective March 31, 2011. Genworth has refused MPPI's requests for an audit, unless such an audit is conducted under "new restrictions and conditions . . . not contained in the Agreement." Am. Comp. ¶ 36. MPPI asserts that Genworth has thereby failed to perform its obligations under Section Twenty of the Agreement.

Genworth does not dispute these allegations, but nevertheless contends the Court may not order specific performance because there is no longer a valid contract in place to enforce a claim of specific performance. However, as MPPI correctly notes, it requested performance of the audit while the Agreement was still in place. Because it sought to enforce its audit rights against Genworth prior to termination of the Agreement, MPPI argues it is entitled to specific performance even if the Agreement is now terminated. Otherwise, contends MPPI, "parties would just have to stall another party's rights under the contract until the contract was terminated to avoid contractual obligations and duties." (DE-26, p.17).

The undersigned agrees with MPPI that it has stated a claim for breach of contract based on Genworth's failure to perform according to the plain language of Section Twenty of the Agreement. Genworth responds that, even it MPPI states a valid claim for breach of contract, the Court should not order specific performance as a remedy without protections and restrictions in place in order to protect the confidential information of third parties. Upon a motion to dismiss based on Rule 12(b)(6), however, the Court's review is restricted to determining whether the plaintiff's allegations state a claim for which relief may be granted, nothing more. Edwards, 178 F.3d at 243-44. The Court is not ordering specific performance at this juncture. However, because MPPI has stated a claim of breach of contract, dismissal of Count Two of the Amended Complaint is inappropriate. The undersigned therefore RECOMMENDS that Genworth's motions to

dismiss Count Two of the Amended Complaint, breach of contract based on Genworth's failure to provide an audit, be DENIED.

### 3. **Count Three: Reformation of the Exclusivity Provision**

With Count Three of the Amended Complaint, MPPI alleges that the parties intended for the Agreement's "Exclusivity Provision," to be an enforceable obligation against Genworth extending beyond the termination of the Agreement.  Section 3(d) of the Agreement states in relevant part that:  "During the Term of this Agreement, including any renewals or extensions thereof, MPPI and SBC agree to the following: . . . . (d) MPPI will remain the supplier for Genworth's IUI products while IUI products are used by Genworth in conjunction with any mortgage insurance product."  (DE-17-1, pp.2-3). MPPI alleges that "MPPI and Genworth had no intention that the Exclusivity Provision could be terminated without cause upon 90 days notice under the Termination Provision of the Agreement but rather intended that the Exclusivity Provision would continue until the natural term of the Agreement."  Am. Comp. ¶ 63.  MPPI contends that, due to either mutual mistake of the parties, or unilateral mistake by MPPI, which Genworth then exploited, the "Exclusivity Provision, as written, fails to express the real agreement of the parties."  MPPI therefore asks the Court to grant equitable relief and reform the contract to reflect the true intentions of the parties.

Under the governing law of Florida,

> [t]o state a cause of action for reformation of a contract, the complaint must allege that, as a result of a mutual mistake or a unilateral mistake by

one party coupled with the inequitable conduct of the other party, the insurance contract fails to express the agreement of the parties.

Romo v. Amedex Ins. Co., 930 So. 2d 643, 649 (Fla. Dist. Ct. App. 3d Dist. 2006). As MPPI has properly alleged all of the essential elements to state a claim for reformation of the Agreement, the undersigned RECOMMENDS that Genworth's motions to dismiss Count Three of the Amended Complaint pursuant to Rule 12(b)(6) be DENIED.

## B. **Rule 12(b)(1): Standing**

Genworth argues MPPI lacks standing to pursue its breach of contract claim based on anticipatory repudiation because it is not a party to the Cover Notes and Policies. Further, asserts Genworth, the Cover Notes and Policies represent a distinct contract, separate and apart from the Agreement to which MPPI is a party. Because MPPI bases its breach of contract action on the Cover Notes and Policies to which it is not a party, it lacks standing to seek enforcement. Genworth also contends MPPI lacks standing as SBC's agent to bring its breach of contract claim. The undersigned agrees.

As discussed *supra*, MPPI is not a party to the Cover Notes and Policies. Accordingly, MPPI lacks standing to bring a claim based on any purported breach of the Cover Notes and Policies. *See* Cara's Notions, 140 F.3d at 569 n.2. Because MPPI has not sustained its burden of establishing its standing to pursue Count One of the Amended Complaint, dismissal of this claim is appropriate. *See* Gen. Tech. Applications, Inc. v. Exro Ltda, 388 F.3d 114, 118-20 (4th Cir. 2004).

Nor can MPPI pursue its claim as SBC's agent. While MPPI alleges that it is "authorized to bring this action on its own behalf, as well as SBC's behalf," Am. Comp.¶ 16, it nowhere alleges that it has in fact brought any claim on behalf of SBC, that SBC has suffered any damages because of any purported breach, or that SBC disputes termination of the Agreement or the Cover Notes and Policies. And although the Agreement states that "MPPI is an exclusive agent [of SBC] and is authorized to act on its behalf with respect to the services and obligations provided herein," nothing in the Agreement authorizes MPPI to litigate on behalf of SBC. *See* <u>CGM, LLC v. Bellsouth Telecomms., Inc.</u>, No. 3:09-CV-377, 2010 U.S. Dist. LEXIS 63450, at *20-23 (W.D.N.C. Mar. 16, 2010) (determining that the agent's authority to represent third parties in their contractual dealings with the defendant did "not mean that [the agent] has authority to litigate on behalf of its clients"), *affirmed*, 2011 U.S. App. LEXIS 24306 (4th Cir. 2011). Similarly, there is no allegation or evidence that SBC has assigned its rights to MPPI, which the Agreement prohibits "without the prior written consent of the other parties." (DE-17-1, p.9). As MPPI has failed to establish that it has standing to pursue a claim based on an alleged breach of the Cover Notes and Policies, the undersigned RECOMMENDS that Count One of the Amended Complaint be dismissed pursuant to Rule 12(b)(1).

## C. **Rule 12(b)(7): Failure to Join SBC as a Necessary Party**

Genworth argues that SBC is a necessary party to the instant dispute. "The cases are virtually unanimous in holding that in suits between parties to a contract seeking

rescission of that contract, all parties to the contract, and others having a substantial interest in it, are necessary parties." Delta Fin. Corp. v. Paul D. Comanduras & Assocs., 973 F.2d 301, 305 (4th Cir. 1992) (citing Acton Co., Inc. of Mass. v. Bachman Foods, Inc., 668 F.2d 76, 81-82 (1st Cir. 1982)); *see also* 7 Charles Allen Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 1613 (3d ed. 1998 & 2010 update) ("In cases seeking reformation, cancellation, rescission, or otherwise challenging the validity of a contract, [as to] all parties to the contract . . . joinder will be required."). In determining whether a party is necessary, "[a] court should hesitate to conclude . . . that a litigant can serve as a proxy for an absent party unless the interests of the two are identical." National Union Fire Ins. Co., 210 F.3d at 251.

"The party making the Rule 12(b)(7) motion bears the burden of showing that required parties have not been joined." Mainstream Constr. Group, Inc. v. Dollar Props., LLC, No. 7:09-CV-00148-BR, 2010 U.S. Dist. LEXIS 50776, at *3 (E.D.N.C. May 20, 2010) (citing Wood, 429 F.3d at 92 and Hughes v. Bank of Am., No. 5:07CV00109, 2008 U.S. Dist. LEXIS 65310, at *3-4 (W.D. Va. Aug. 26, 2008)). "'To satisfy this burden, [the moving party] may present evidence outside the pleadings, such as affidavits of persons knowledgeable about the party's interest, and the Court may consider such evidence, as well as evidence of existing alternative state remedies.'" *Id.* (quoting Hughes, at *4); *see also* 5C Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1359 (3d ed. 2007) (in considering a Rule 12(b)(7) motion to dismiss, a district court "is not limited to the pleadings").

Here, MPPI seeks to enforce a claim based on an alleged breach of a bilateral insurance contract issued by SBC to Genworth. Similarly, by Count Three of its Amended Complaint, MPPI seeks to equitably reform the three-party Agreement to which SBC is a party. Genworth has moved to submit supplemental evidence in support of its argument that SBC is a necessary party. (DE-44). The undersigned RECOMMENDS that Genworth's motion be GRANTED. The supplemental evidence consists of an affidavit by John Clifford, Chief Risk Officer at Genworth, along with an attached letter dated August 9, 2011 from SBC to Mr. Clifford stating, *inter alia*, that SBC does not dispute termination of the Agreement or cancellation of the Cover Notes and Policies, and that MPPI is not authorized to bring any action on its behalf. (DE-44-1, pp.7-8). The letter from SBC establishes beyond dispute that the interests of SBC and MPPI are not aligned in the present action. Thus, SBC is a necessary party to the instant dispute and the Court should not reform the Agreement without joining SBC as a necessary party. The undersigned therefore RECOMMENDS that SBC be joined as a necessary party. Absent joinder, the undersigned RECOMMENDS that Count One and Count Three of the Amended Complaint be dismissed.[5]

## D. Other Motions

---

[5] The breach of contract claim alleged in Count Two of the Amended Complaint is narrowly focused on Genworth's failure to provide MPPI with an audit under the Agreement. As Genworth's failure to perform this specific act in relation to MPPI does not in any way implicate SBC's interests under the Agreement, it does not appear that SBC would be a necessary party to Count Two of the Amended Complaint.

The parties have filed a number of other motions, some of which are disposed of to a certain extent by the recommended dismissal of Count One of the Amended Complaint. Others remain relevant. The parties have filed a joint motion for a protective order in order to protect commercially sensitive and nonpublic personal information of third parties produced during discovery. (DE-71). The undersigned RECOMMENDS that the joint motion for a protective order be GRANTED and the proposed joint protective order submitted at Docket Entry 71-1 be ADOPTED as an order of this Court.

Next, MPPI seeks partial summary judgment on Count Two of its Amended Complaint. (DE-56). Pursuant to Rule 56(d) of the Federal Rules of Civil Procedure, Genworth asks the Court to either deny or defer ruling on MPPI's motion for partial summary judgment until it completes discovery relevant to Count Two. (DE-63). The undersigned RECOMMENDS that Genworth's motion to defer ruling on MPPI's motion for partial summary judgment until discovery is completed (DE-63) be GRANTED. The undersigned therefore RECOMMENDS that the Court either deny without prejudice MPPI's motion for partial summary judgment (DE-56) or defer ruling until discovery is completed.

MPPI has also filed two motions to compel discovery (DE-32, DE-51), while Genworth has filed several motions to stay or to extend the time for discovery pending the outcome of its present motions to dismiss. (DE-38, DE-61). Genworth also asks the Court to enter a protective order limiting the timeframe of discovery. (DE-40). MPPI

28

agrees that extension of time to complete discovery is necessary and requests the Court amend the scheduling order to extend completion of discovery by ninety days. (DE-59).

As the undersigned has recommended dismissal of Count One of the Amended Complaint and joinder of SBC as a necessary party, an extension of discovery deadlines appears prudent. The undersigned therefore RECOMMENDS that the motions to amend the scheduling order to extend the completion of discovery (DE-61, DE-59) be GRANTED, and that the deadline for completion of discovery be extended by ninety days, up to and including June 12, 2012. Reports from retained experts are due by March 12, 2012, and from rebuttal experts by April 12, 2012. Potentially dispositive motions should be filed no later than September 12, 2012.

It is further RECOMMENDED that MPPI's motions to compel discovery (DE-32, DE-51) be DENIED WITHOUT PREJUDICE at this juncture, pending the district court's adoption or rejection of this Memorandum and Recommendation regarding the motions to dismiss, the recommended entry of a protective order. Genworth moreover represents that it has now "identified a production format that should satisfy MPPI's request for metadata" and thereby obviate the need for Court intervention with regard to MPPI's motion to compel production of electronically stored information in native format. (DE-42, p.1). Similarly, Genworth's motion for a protective order limiting the timeframes for discovery may be largely unnecessary, given the recommended dismissal of Count One of the Amended Complaint. The undersigned therefore RECOMMENDS

29

that Genworth's motion for a protective order (DE-40) be DENIED WITHOUT PREJUDICE.

## IV.  **CONCLUSION**

For the foregoing reasons, the undersigned RECOMMENDS the following:

(1) That Genworth's motions to dismiss Count One of the Amended Complaint pursuant to Rule 12(b)(6) be GRANTED;

(2) That Genworth's motions to dismiss Counts Two and Three of the Amended Complaint pursuant to Rule 12(b)(6) be DENIED;

(3) That Genworth's motion to file supplemental evidence (DE-44) be GRANTED;

(4) That SBC be JOINED as a necessary party;

(5) That absent joinder, Count One and Count Three of the Amended Complaint be DISMISSED pursuant to Rule 12(b)(7);

(6) That Genworth's motion to defer ruling on MPPI's motion for partial summary judgment until completion of discovery (DE-63) be GRANTED;

(7) That the parties' joint motion for a protective order (DE-71) be GRANTED;

(8) That the motions to amend the scheduling order (DE-59, DE-61) be GRANTED and the deadline for completion of discovery be extended up to and including June 12, 2012, with reports from retained experts due by March 12, 2012, and from rebuttal experts by April 12, 2012.  Potentially dispositive motions should be filed no later than September 12, 2012.

(9) That MPPI's motions to compel (DE-32, DE-51) be DENIED WITHOUT PREJUDICE;

(10) That Genworth's motion for a protective order (DE-40) be DENIED WITHOUT PREJUDICE.

SO RECOMMENDED in Chambers at Raleigh, North Carolina this 20th day of January, 2012.

_____
WILLIAM A. WEBB
UNITED STATES MAGISTRATE JUDGE